IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CRIM. NO.: 11-cr-0002 |
| v. ) | |
| ) | |
| DWAYNE DENNIS ) | |
| Defendant. ) | |
| _____) | |

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Finch, Senior Judge

THIS MATTER is before the Court on Defendant Dwayne Dennis' Motion to Suppress. After obtaining a search warrant based largely on information provided by a confidential informant, police searched an apartment where Defendant resided and found firearms, drugs, cash, and a bullet proof vest. Defendant seeks to suppress this evidence on the grounds that the search warrant affidavit did not provide probable cause and contained knowingly false information in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). For the reasons discussed below, Defendant's Motion is denied.

**I.    The Affidavit**

On December 17, 2010, Immigrations and Customs Enforcement (hereinafter "ICE") Special Agent Yusuf Adeen applied for a search warrant for #159 Estate Diamond Ruby and Carib Villas I Apartment 3F. S/A Adeen's search warrant affidavit (the "Adeen Affidavit") contained information that he learned from an unnamed informant (the "Source"), "who ha[d] previously provided reliable information." (Aff. of S/A Adeen ¶ 4, Doc. 40-1) The Adeen

Affidavit alleged that, over the course of four conversations occurring over a three week period, the Source revealed the following:

1. #159 Estate Diamond Ruby and Carib Villas I Apartment 3F contained "cocaine, marijuana, firearms, and fully automatic assault rifles." (*Id*. ¶ 4)

2. Two men whom he knows as "the Twins" were in involved in narcotics distribution and stored and distributed drugs from #159 Estate Diamond Ruby. (*Id.*)

3. The Source "delivered packages for the Twins that he/she believed to contain narcotics." (*Id.*)

4. The Source "helped the Twins clean and lubricate an assault rifle called a 'Street Sweeper' at the Diamond Ruby residence," and saw multiple other firearms at the residence, including other "military type weapons." (*Id.*)

5. The Twins were "not lawfully employed" but managed to rent the residence for approximately $1,200 per month and drove two late model BMW vehicles and a 2002 Honda Civic Sedan. (*Id*. ¶ 5) [1]

6. The Twins gave the Source "large amounts of cash to send to recipients in the Continental US via a money remitter on several occasions as recent as about November 17, 2010." (*Id*. ¶ 6)

7. A black male whom the Source knows as "Kurt" brought four pistols to the Twins at the Estate Diamond Ruby residence and, at that time, there was approximately three pounds of marijuana at that residence. (*Id*. ¶ 7) [2]

---

[1] The Source relayed the information contained in paragraphs 4 and 5 of the Adeen Affidavit to S/A Adeen on November 10, 2010. (*Id.*)
[2] The Source relayed this information to S/A Adeen on November 24, 2010. (*Id.*)

8. One of the Twins rents an apartment at Carib Villas Apartments in Christiansted. (*Id.*)

9. One of the Twins picked up a United States Postal Service Priority Mail package that contained two pounds of marijuana and four firearms from the post office. (*Id.* ¶ 8)[3]

10. A female from St. Thomas, whom the Source knows as "Denise," brings cocaine to the Twins from St. Thomas. The last time Denise brought cocaine to the Twins' Estate Diamond Ruby Residence was around Thanksgiving 2010. (*Id.* ¶ 9)

11. "[S]ome of the narcotics, especially the cocaine that the Twins smuggle into the territory are stored at the residence at Carib Villas Apartments. The Twins also store their assault style weapons at Carib Villas and mostly keep handguns at Diamond Ruby." (*Id.* ¶10)[4]

The Adeen Affidavit also stated that an ICE investigation revealed that the "Twins" described by the Source were, in fact, Dwayne and Wayne Dennis, whom are identical twins and, according to the National Crime Information Center, were both convicted in 1999 for controlled substance violations. (*Id*. ¶ 4) The affidavit stated that on November 29, 2010, police surveilled #159 Estate Diamond Ruby and observed a gold Honda Civic, green BWM coupe convertible and a white GMC van parked at the residence. (*Id.* ¶ 10) In the affidavit, S/A Adeen noted that "further investigation revealed that one of the Twins resides at Carib Villas I Apt 3F with his girlfriend." (*Id.* ¶ 7) S/A Adeen concluded that based on the contents of his affidavit, he believed that there was probable cause "to search #159 Estate Diamond Ruby and Carib Villas I Apartment 3F for illegal narcotics and firearms." (*Id*. ¶ 12)

---

[3] The Source relayed this information to S/A Adeen on November 26, 2010. (*Id.*)
[4] S/A Adeen learned this information from a debriefing of the Source on December 1, 2010.

3

On December 17, 2010, Magistrate Judge George Cannon issued a search warrant for Carib Villas I Apartment 3F and #159 Estate Diamond Ruby. ICE agents executed the search warrants on December 20, 2010. During the search of Carib Villas I Apartment 3F, ICE agents discovered, amongst other things, a loaded AK-47, two loaded Glock handguns, spare ammunition, a quarter kilogram of cocaine and a bullet proof vest. (*See* Mem. Op. and Order Denying Appeal of Magistrate Judge's Detention Order at 2, Doc. 14)

Defendant now seeks to suppress all evidence obtained during the December 20, 2010 search of Carib Villas I Apartment 3F.

## II. Analysis

### a. Did the Adeen Affidavit Provide Probable Cause to Support Issuance of the Warrant?

A magistrate judge may issue a search warrant only if he or she concludes that "based on a totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Bond*, 581 F.3d 128, 139 (3d Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[A] warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). However, "a magistrate may issue a search warrant even without direct evidence. Probable cause can be, and often is, inferred from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence]." *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (citations and internal quotations omitted).

Because of "the Fourth Amendment's strong preference for searches conducted pursuant to a warrant . . . [a] magistrate's determination of probable cause should be paid great deference

by reviewing courts." *Gates*, 462 U.S. at 236; *see also United States v. Ritter*, 416 F.3d 256, 263 (3d Cir. 2005) ("[T]he conclusions of a neutral magistrate regarding probable cause are entitled to a great deal of deference by a reviewing court, and the temptation to second-guess those conclusions should be avoided." (citing *Gates*, 462 U.S. at 236)). A district court should not "merely rubber stamp a magistrate's conclusions" but must also "heed the Supreme Court's direction that 'doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'" *Stearn*, 597 F.3d at 554 (citing *Gates*, 462 U.S. at 237 n.10). Accordingly, the test is not "whether probable cause actually existed, but only whether there was a 'substantial basis' for finding probable cause." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

The Adeen Affidavit primarily contains information provided by "the Source," an unidentified informant. "A magistrate may issue a warrant relying primarily or in part upon the statements of a confidential informant, so long as the totality of the circumstances gives rise to probable cause." *Stearn*, 597 F.3d at 555. To determine whether a tip provides probable cause, courts consider the tipster's reliability, veracity, and basis of knowledge. *Id.* at 555 (citing *Gates*, 462 U.S. at 238-39); *see also United States v. Harvey*, 2 F.3d 1318, 1321-22 (3d Cir. 1993). A tipster need not score strongly in all of these "elements," so long as a "a deficiency in one [element] [is] compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Stearn*, 597 F.3d at 555 (quoting *Gates*, 462 U.S. at 233).

Here, several factors support the reliability of the Source. First, the Adeen Affidavit established that the Source spoke to the agents four times over a three week period concerning

5

the Twins illegal activities.[5] Because of the iterated nature of the communications with the agents, the Source faced the risk of detection if he/she fabricated details concerning the Twins. This significantly contributes to the Source's overall reliability. *United States v. Brown*, 448 F.3d 239, 249 (3d Cir. 2006) (holding that when "[t]he person providing the tip can be held responsible if her allegations turn out to be fabricated" indicates reliability) (citation omitted); *United States v. Nelson*, 284 F.3d 472, 482 (3d Cir. 2002) (". . . one of the characteristics of a known informant that contributes to reliability is that he or she can be held responsible if the allegations turn out to be fabricated."); *see also Adams v. Williams*, 407 U.S. 143, 146 (1972) (finding that information relayed to police officer by informant provided officer with reasonable suspicion to perform *Terry* stop because "[t]he informant was known to [the officer] personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip.").[6]

---

[5] According to the Adeen Affidavit, prior to this case, the Source had "previously provided reliable information." As pointed out by Defendant, however, S/A Adeen provided no details concerning the Source's prior assistance such as whether it involved a drug investigation or whether it lead to the discovery of evidence, arrests, and/or convictions. *Cf. United States v. Marino*, 682 F.2d 449, 453 (3d Cir. 1982) ("[A] prior history of tips that result in arrests and in the securing of information and evidence can provide a sufficient basis for concluding that the information is reliable."); *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004) (finding informant reliable because he "had a track record of supplying reliable information, which resulted in three successful felony controlled substance convictions, five controlled substances purchases, and four pending controlled substance convictions."). Accordingly, the Court places little weight on S/A Adeen's claim that the source provided reliable information in *past* cases.

[6] Courts consider anonymous tips to be less reliable in part because anonymous tipsters can more readily provide false information without fear of accountability. *See, e.g., Florida v. J.L.*, 529 U.S. 266, 270 (2000) ("Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.") (citations omitted); *see also United States v. Torres*, 534 F.3d 207, 212 (3d Cir. 2008) (noting difference in reliability concerns between an anonymous tipster and a known informant).

Second, police were able to corroborate a significant number of the details provided by the Source, including that the individuals identified as the "Twins" were real people—Wayne and Dwayne Dennis, drove a BMW and a Honda Civic, and had residences at estate Diamond Ruby and Carib Villas. While these details were innocent, their corroboration provided the Magistrate Judge with a basis to find that the Source was familiar with the Twins and was not simply making up his allegations. *Stearn*, 597 F.3d at 556 (finding that informant "demonstrated knowledge of [suspect's] home and cars" relevant to reliability determination); *United States v. Johnson*, 592 F.3d 442, 50 (3d Cir. 2010) (finding that corroboration of location, color, and distinguishing feature of taxicab provided by tipster "enhanced the reliability of the information that she provided to the police"); *Ritter*, 416 F.3d at 272 (Smith, J., dissenting in part and concurring in part) ("The police corroboration of the anonymous tip's innocent details, the cases teach, bolsters the veracity and reliability of the tip, as well as suggests that the tipster is a trusted intimate of the target, and thus may be privy to inside information concerning the target's alleged lawbreaking."); *United States v. Nelson*, 284 F.3d 472, 483 (3d Cir. 2002) (detailed information regarding, model, color, and other distinctive characteristics of vehicle supported reliability of information provided by anonymous informant). Furthermore, police were also able to determine that the Twins had prior drug convictions. This corroborated the Source's claim that the Twins were involved in narcotics distribution. *Stearn*, 597 F.3d at 557 (previous drug arrests of investigation targets corroborated informant's tip that they were currently engaged in drug trafficking); *United States v. Conley*, 4. F.3d 1200, 1207 (3d Cir. 1993) ("The use of prior arrests and convictions to aid in establishing probable cause is not only permissible, but is often helpful. This is especially so where . . . the previous arrest or conviction involves a crime of the same general nature as the one which the warrant is seeking to uncover.") (collecting cases).

Third, in revealing details about the Twins' illegal firearm and drug activities, the Source implicated him/herself by stating that he/she had cleaned an assault rifle at a residence of the Twins, sent large amounts of cash to the United States for the Twins and had delivered packages that he/she suspected contained drugs on behalf of the Twins. For similar reasons that statements made against penal interest are excepted from the hearsay rule (*see* Fed. R. Evid. 804(b)(3)), they are also treated as reliable when determining whether probable cause to issue a search warrant exists. *United States v. Harris*, 403 U.S. 573, 583 (1971) (plurality opinion) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility-sufficient at least to support a finding of probable cause to search."); *Agnellino v. New Jersey*, 493 F.2d 714, 726 (3d Cir. 1974) (finding that statements of informant contained in search warrant affidavit provided probable cause because "[t]he information, however, consisted of declarations by the informant against his penal interest. The declarations not only directly implicated appellant but we believe a disinterested and prudent observer would have credited these statements as reliable."); *see United States v. Olson*, 408 F.3d 366, 371 (7th Cir. 2005) (holding that informant's statement that he went to defendant's house to rob him and while there observed firearms and drugs was reliable support for search warrant because it was a statement made against informant's penal interest); *United States v. Holmes*, 69 Fed. Appx. 66, 69 (3d Cir. 2003) (unpublished) (finding fact that informant's "statements were made against his penal interest and from his direct involvement . . . clearly supports [his] reliability."); *United States v. De Leon*, 412 F. Supp. 89, 94 (D.V.I. 1976) ("Information supplied by a co-conspirator or an accomplice to a crime, or any person involved in the criminal activity, has frequently been recognized as sufficient to establish probable cause." (citing *Harris*, 403 U.S. at 583)).

Finally, the Adeen Affidavit provided enough details for the Magistrate Judge to find that the Source had "inside information" about the Twins and thus a sufficient "basis of knowledge" for his/her claim that Twins store narcotics and firearms at the Carib Villas residence. The Source claimed to have seen (and cleaned) illegal firearms at one of the Twins' Diamond Ruby residence and to have sent large amounts of cash and transported packages at the behest of the Twins. Additionally, the Source provided substantial details about the Twins' drug and firearm operations including the type and amount of drugs and firearms received and stored by the Twins, the manner in which the drugs and firearms were transported, and who delivered drugs and guns to them. These facts demonstrate that the Source had firsthand knowledge of the Twins' illegal activities. *Johnson*, 592 F.3d at 449-50 (fact that tipster provided "eyewitness observations" enhanced reliability of tip) (citing *Valentine*, 232 F.3d at 354); *Torres*, 534 F.3d at 211-12 (fact that "tipster was an eyewitness who had recently witnessed the alleged criminal activity" and provided a "straightforward and thorough description" weighed in favor of reliability) (citing *Brown*, 448 F.3d at 249-50); *Nelson*, 284 F.3d at 482 (finding that the "inside nature of the information" provided by tipster weighed in favor of his reliability). The Source's inside information and firsthand knowledge of the Twins' illegal activities provided the Magistrate Judge with an ample basis to find that the Source's claim that the Twins store narcotics and firearms at the Carib Villas residence was accurate and credible.

Defendant argues that the Adeen Affidavit fails to provide the Source's basis of knowledge for his allegation in paragraph 11 that the Twins store guns and firearms at the Carib Villas residence. Admittedly, the Source's basis of knowledge regarding paragraph 11 would be more robust had the Adeen Affidavit specifically reported that the Source personally observed guns and drugs at the Carib Villas residence. Probable cause necessary to justify a search,

9

however, does not require that an informant demonstrate reliability as to each individual statement of fact. In *Illinois v. Gates*, the Supreme Court rejected the approach urged by Defendant and instructed courts to focus on the "overall reliability of a tip" while avoiding an "excessively technical dissection of [an] informant[']s tip[]". 462 U.S. at 246; *see also United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) ("[S]tatements in an affidavit may not be read in isolation-the affidavit must be read as a whole."). In *United States v. Jones*, the Third Circuit found that an anonymous tipster's statement "that a cellular telephone taken during the robbery was located in [defendant's] residence" adequately provided a "nexus to the defendants' residences" sufficient to support probable cause for a search even though the tipster did not specifically say that he *observed* the phone at the defendant's home. 994 F.2d 1051, 1057 (3d Cir. 1993). The Court noted that the reliability of the tipster was not in question because other aspects of his tip had been corroborated by police. *Id*. at 1057 n.7. Here, as in *Jones*, the Court need not find a specific basis for knowledge for paragraph 11 because there is sufficient indicia of the Source's overall reliability.

Even if the Court were to reject paragraph 11 of the affidavit as providing a sufficient nexus between the Twins' drug and gun activities to the Carib Villas apartment, the Magistrate Judge could still have found probable cause that evidence of illegal activity would be found there. Case law in this Circuit holds that "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that that person's residence contains evidence of the crime increases," and that, with regard to drug crimes in particular, "evidence . . . is likely to be found where the [drug] dealers reside." *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (citations omitted). Under what the Third Circuit has termed the "drug dealer inference," a magistrate may find probable cause that a drug dealer's residence contains evidence of drug

10

dealing, even in the absence of a direct link to the residence (such as observation of guns or drugs there), based on "many factors" including evidence that the defendant participated in a large scale drug operation. *Stearn*, 597 F.3d at 558-59. A nexus may also be established when there is evidence that 1) the defendant committed the crime under investigation with another person and 2) the accomplice's home contains evidence of the crime. *Jones*, 994 F.2d at 1057 (finding probable cause to search defendant's home based on information that two other suspects linked to defendant in three-person robbery stored evidence of robbery at their homes).

Here, the Source informed agents that the Twins received at least five pounds of marijuana, some cocaine, and several firearms and instructed him/her to deliver packages and wire funds to the United States on their behalf. This was sufficient to establish that both Twins were involved in a drug distribution operation large enough to raise the inference that they stored drugs and guns at their residences. *Stearn*, 597 F.3d at 559; *Hodge*, 246 F.3d at 306 (finding that it was reasonable to infer that "experienced and repeat drug dealer . . . would store evidence of that dealing at his home" despite "no direct evidence that drugs or drug paraphernalia would be located at [his] home") (collecting cases); *Whitner*, 219 F.3d at 297 (collecting cases); *Jones*, 994 F.2d at 1056 ("firearms[] are also the types of evidence likely to be kept in a suspect's residence."); *see also Burton*, 288 F.3d at 103 (finding inference that defendant was a drug dealer reasonable based on quantity of drugs); Furthermore, while the Source stated that three pounds of marijuana were delivered to the Diamond Ruby residence, he/she also stated that one of the Twins picked up two pounds of marijuana and four firearms from the post-office, but did not indicate where those guns and drugs were delivered. As the storage place for those guns and drugs was unaccounted for in the affidavit, it was reasonable for the Magistrate Judge to find probable cause that those guns and drugs would be found at either of the Twins' residences.

11

*Stearn*, 597 F.3d at 560 ("But even if another location is an equally likely repository of evidence, a magistrate may infer probable cause to search the drug dealer's home so long as the affidavit establishes a nexus between the dealer's home and the crime under investigation."); *Jones*, 994 F.2d at 1056 (fact that cash stolen from robbery was unaccounted for supported probable cause to search all three suspects' residences). Finally, because the Source implicated both Twins in the same drug dealing operation and observed contraband at one of the Twins' residences (the Diamond Ruby residence), it was not unreasonable for the Magistrate Judge to find probable cause that guns and drugs would also be found at the other Twins' residence – the Carib Villas apartment. *Jones*, 994 F.2d at 1057 (finding that "extra information linking the crime to the residences of [Hunte's alleged codefendants] . . . bears on the likelihood that Hunte also kept evidence in his home.").

Defendant also argues that the information provided by the Source was "stale" in that even if credible when made, it failed to provide probable cause on the date the warrant was issued. An application for a search warrant must "establish that certain items are probably located at the present time in a certain place. It is not enough that the items may have been at the specified location at some time in the past-there must be probable cause to believe that they are there when the warrant issues." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) (citing 1 W. LAFAVE, SEARCH AND SEIZURE § 3.7(a) (1978)). "The age of the information supporting a warrant application is a factor in determining probable cause." *United States v. Vosburgh*, 602 F.3d 512, 528 (3d Cir. 2010) (citing *Harvey*, 2 F.3d at 1322) (internal brackets and quotations omitted). If the information is too old or "stale," probable cause may no longer exist. *Id.* (citing *United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002)). To analyze a claim of staleness, a court does not "simply count the number of the days between the date of the

alleged criminal activity and the date of the warrant," but "must also consider the nature of the crime and the type of evidence involved." *Id.* (quoting *Zimmerman*, 277 F.3d at 434) (internal quotation marks omitted); *see also Tehfe*, 722 F.2d at 1119 ("The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched.").

Here, the Adeen Affidavit establishes that the Source provided information to agents on November 10, November 24, November 26, and December 1, 2010. The information provided by the Source on those dates was fresh; the Source was providing agents with up-to-date information about the Twins' latest firearm and drug activities, including new arrivals of firearms and drugs. This information established that over the course of twenty-one days, the Twins were involved with possessing, receiving or distributing at least eight handguns, one "street sweeper" assault rifle and other military style rifles, five pounds of marijuana, and an unknown amount of cocaine. Furthermore, the Source was tasked with sending cash to the United States "on several occasions," as recent as November 17 and stated that the Twins received firearms, marijuana and cocaine as recent as the end of November 2010. From this, the Magistrate Judge could have concluded that the Twins were engaged in protracted and continuous criminal activity. *United States v. Yusuf*, 461 F.3d 374, 391 (3d Cir. 2006) ("[T]he mere passage of time does not render information in an affidavit stale where . . . the facts suggest that the activity is of a protracted and continuous nature . . . .") (citing *Tehfe*, 722 F.2d at 1119)); *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005) ("[W]here the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance."). In other words, because the Adeen Affidavit established that

13

the Twins were engaged in ongoing criminal conduct, the Magistrate Judge could reasonable infer that evidence of this criminal activity would still be found at Carib Villas I Apartment 3F on December 17, 2010, fifteen to twenty days after the last report of criminal activity. *See United States v. Williams*, 124 F.3d 411, 421 (3d Cir. 1997) ("The fact that evidence of the suspected criminal activity continued up through the last weeks before the search strongly suggests that the information in the affidavit was not stale.").

### b. Has Defendant Made a Preliminary Showing Sufficient to Warrant a *Franks* Hearing?

"*Franks* requires suppression of evidence obtained pursuant to a warrant issued on the basis of a false statement that was both material to the finding of probable cause and made either knowingly and intentionally or with reckless disregard for the truth." *United States v. Brown*, 631 F.3d 638, 641-42 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 155-56); *see also United States v. Frost*, 999 F.2d 737, 742-43 (3d Cir. 1993) ("Thus, in order to secure suppression of the fruits of the search, a defendant must show both that bad faith or reckless disregard existed on the part of the affiant, and that there would have been no probable cause but for the incorrect statement.").

*Franks* established a procedure by which a defendant may challenge whether a warrant was obtained with deliberately false information. In order to merit an evidentiary hearing (known as a *Franks* hearing), Defendant must make "*a substantial preliminary showing* that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *United States v. Brown*, 3 F.3d 673, 676 (3d Cir. 1993) (quoting *Franks*, 438 U.S. at 155-56) (emphasis added). To make this showing, Defendant cannot rely on conclusory allegations. He must present an "offer of proof

14

contradicting the affidavit, including materials such as sworn affidavits or otherwise reliable statements from witnesses." *Yusuf*, 461 F.3d at 383 (citing *Franks*, 428 U.S. at 171). If Defendant does not make this showing, his *Franks* challenge fails. *Brown*, 3. F.3d at 676. If he does make a substantial showing that the affidavit contained knowingly or recklessly false information, the Court must then excise the false information from the affidavit and determine whether the remaining content is sufficient to support a finding of probable cause. *Id*. If it sufficient, no hearing is required; if it is not, Defendant is entitled to his *Franks* hearing. *Id*.

Here, Defendant asserts that the Adeen Affidavit contained five material misstatements and omissions.[7] First, he claims that the Adeen Affidavit omits the fact that the Source identified the last name of the Twins as "Graham". However, Defendant fails to provide an affidavit or other evidence that the Source ever identified the Twins as "Graham." *Franks*, 438 U.S. at 171; *Harvey*, 2 F.3d at 1323 (rejecting *Franks* challenge because defendant "offers nothing to substantiate his claim"). Moreover, even if the Source had informed S/A Adeen that the Twins were named "Graham," including this fact in the Adeen Affidavit would not have altered the Magistrate Judge's probable cause determination. The Adeen Affidavit demonstrates that the Source provided enough details about the Twins – such as that they were twins, lived at #159 Estate Diamond Ruby and at the Carib Villas Apartments, and drove "BMW vehicles" and "a 2002 Honda Civic Sedan" – for police to verify that the Twins were, in fact, the Dennis twins. Thus, even if the Adeen Affidavit indicated that the Source thought the Twins were "Graham,"

---

[7] *Franks* applies both to misstatements and omissions. *Frost*, 999 F.2d at 742 n.2.

the Magistrate Judge had ample facts upon which to find that the Twins were actually the Dennis Twins who lived at #159 Estate Diamond Ruby and Carib Villas I Apartment 3F.[8]

Second, Defendant claims that S/A Adeen must have made a "misstatement of fact" in paragraph 4 of his affidavit when he states that the Source saw military-type assault weapons at the Diamond Ruby residence because, in paragraph 11, also claims that the Source stated that the Twins "store their assault style weapons at Carib Villas and mostly keep handguns at Diamond Ruby." Defendant does not explain how either of these paragraphs contained misstatements of fact, let alone that they were "deliberate" or "reckless." The Court assumes Defendant is suggesting that these statements are inconsistent and therefore one of them must be factually incorrect. However, the statements are not inconsistent. The Source stated that he helped the Twins clean an assault rifle at the Diamond Ruby residence and saw other assault weaponry there and that the Twins store assault rifles at Carib Villas. There is nothing inconsistent about these observations and certainly nothing to suggest a deliberate or reckless misstatement of fact.

Third, Defendant contends that the statement in paragraph 5— "The Source also stated that, the Twins are not lawfully employed but manage to rent the residence for approximately $1,200 per month"—is false because it omits the facts that Defendant does not live nor pay rent at the Diamond Ruby residence. Defendant offers no proof that this statement is false or that S/A Adeen knew of its falsity when applying for the warrant. *Brown*, 3 F.3d at 676 (defendant must show that affiant acted "knowingly and intentionally, or with reckless disregard for the truth). Furthermore, when read in context of paragraph 7, which states that one of the Twins rents an

---

[8] Defendant also argues that if the Adeen Affidavit had correctly stated that the Source first identified the Twins as "Graham," this would have significantly undermined his credibility. For the reasons discussed above, the Court disagrees and finds that even if the Adeen Affidavit had stated that the Source identified the Twins as "Graham," it otherwise adequately demonstrated the Source's reliability and basis of knowledge.

16

apartment at the Carib Villas with his girlfriend, and the fact that this affidavit was used in applying for a search warrant for both the Carib Villas and Diamond Ruby residences, the Court cannot find that informing the Magistrate Judge specifically that only Wayne Dennis lived at the Diamond Ruby residence would have made any difference. Probable cause existed to search the Carib Villas apartment regardless of whether both Twins lived at or paid rent on the Diamond Ruby residence.

Fourth, Defendant also challenges paragraph 5 because, as he alleges, the "Agents knew that Defendant, Dwayne Dennis, was employed in restoring and selling automobiles as well as in the breeding of American Standard Bulldogs." (Def.'s Mot. at 9) Defendant does not include any support for this proposition with his suppression motion. However, in support of his renewed Motion for Pre-Trial Release, filed on the same day as his suppression motion, Defendant does include documents that he claims show that he was "gainfully employed . . . in a number of legitimate, documented businesses." (*See* Def.'s Mot. for Pre-Trial Release at 3, Doc. 41)[9] Even assuming that these documents show that Defendant was "lawfully employed" in November 2010, Defendant still has not shown that agents knew or even should have known this when they applied for the search warrant. *Brown*, 3 F.3d at 676. Furthermore, this statement

---

[9] These documents include an unsworn declaration from John Hodge stating that in the past five years, he repaired and sold used cars on behalf of Wayne and Dwayne Dennis (Doc. 41-1); six "Bills of Sale" of used cars sold by Dwayne and Wayne Dennis or Dwayne Dennis individually ranging in date from May 18, 2010 to October 22, 2010 (Doc. 41-2); and four "Bills of Sale" of pitbulls sold by Dwayne and Wayne Dennis dated November 26, 2010 through December 10, 2010. (Doc. 41-3)

17

carries virtually no weight in the probable cause analysis so its excision from the affidavit would have no effect on the Magistrate Judge's probable cause finding.[10]

Finally, Defendant contends that the allegation in paragraph 11, i.e., that the source stated to agents that the Twins store cocaine and assault weapons at the Carib Villas apartment, was false because "upon information and belief, no such statement was made." (Def.'s Mot. at 9) *Franks* requires that a Defendant make some substantive preliminary showing that an affidavit contains knowingly false information. Defendant's "information and belief" is a fatally insufficient basis to merit a *Franks* hearing. *Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing . . . the challenger's attack must be more than conclusory . . . ."); *United States v. Hornick*, 815 F.2d 1156, 1158 (7th Cir. 1987) (finding counsel's statement that "[u]pon information and belief, the confidential informant . . . does not exist" insufficient basis for a *Frank*'s hearing"); *United States v. Jefferson*, 2009 WL 4549189, at *4 (E.D. Wis. Nov. 27, 2009) ("[S]uch 'upon information and belief' assertions will almost always be insufficient to present the requisite substantial preliminary showing to warrant a *Franks* hearing . . . ."). Accordingly, Defendant has not made the requisite preliminary showing to warrant a *Franks* hearing.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Suppress and request for a *Franks* hearing. Accordingly, it is hereby

**ORDERED** that Defendant's Motion to Suppress is **DENIED;**

---

[10] Indeed, if the Court were to include/excise these four alleged omissions and misstatements from the Adeen Affidavit, it would still find that the Magistrate Judge had a substantial basis for finding probable cause to search Carib Villas Apartment 3F.

**ORDERED** that Defendant's request for a *Franks* hearing is **DENIED**.

                                        ENTERED:

Dated: August 11, 2011

                                    _____/s/_____
                                    RAYMOND L. FINCH
                                    SENIOR U.S. DISTRICT JUDGE